F I L E D

AUG 28 2008

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Brandon A. Williams, )
    Plaintiff, )
 )
v. ) 1:07cv824 (LMB/TRJ)
 )
Albert J. DeAngelis and Pamela )
M. O'Hagan, )
    Defendants. )

## MEMORANDUM OPINION

Brandon A. Williams, proceeding pro se, filed this civil rights action, pursuant to 42 U.S.C. § 1983 while a Virginia inmate. In his Amended Complaint, plaintiff asserts that defendant Albert J. DeAngelis used excessive force against him and made racial slurs against plaintiff during his arrest, and that defendant Pamela M. O'Hagan is liable under a theory of bystander liability for DeAngelis' use of excessive force.

By Memorandum Opinion and Order dated October 22, 2007, plaintiff's claims against defendants the Virginia Beach Police Department and a "Sergeant Johnson" were dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim, and remaining defendants DeAngelis and O'Hagan[1] were directed to file an answer or other responsive pleadings to the complaint. DeAngelis filed an answer to the complaint on January 29, 2008, and on February 11, 2008, O'Hagan filed a Motion to Dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b), or in the alternative, for Summary Judgment, pursuant to Fed. R. Civ. P. 56. On February 12, 2008, DeAngelis also filed a Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Both defendants submitted

---

[1] Plaintiff named "P.M. O'Hagan" as a defendant in this case. O'Hagan's responsive pleadings clarify that her name is Pamela M. O'Hagan, and the Clerk will be directed to amend the docket caption in this case to reflect defendant's name.

memoranda of law in support of their motions and filed the Notice required by Local Civil Rule 7(K). Plaintiff was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), as well as two thirty-day extensions of time within which to file his response to defendants' Motions. Instead of filing a response, plaintiff has filed motions seeking the production of documents, the issuance of a subpoena duces tecum and a third request for an extension of time to respond to defendants' Motions. For the reasons that follow, defendants' motions for summary judgment will be granted, and O'Hagan's motion to dismiss the complaint will be denied as moot. These dispositions render moot plaintiff's outstanding motions. Additionally, by Order dated October 22, 2007, plaintiff, who was then incarcerated, was given leave to proceed in forma pauperis after consenting to have prison officials deduct the $350.00 filing fee in installments from plaintiff's prison trust account. Plaintiff has been released from incarceration and, pursuant to an Order issued on May 27, 2008, was directed to resubmit his in forma pauperis application. After review of plaintiff's re-submitted application, it appears that plaintiff qualifies to continue proceeding in forma pauperis and the Court will grant his application.

## I. Background

The following material facts are uncontested. On March 1, 2006, defendants DeAngelis and O'Hagan, detectives of the Virginia Beach Police Department, went to a hotel in Norfolk to arrest plaintiff and another individual on several outstanding felony warrants. Plaintiff was arrested at the hotel, handcuffed, and placed in the back seat of O'Hagan's police cruiser. DeAngelis and O'Hagan were responsible for transporting plaintiff to police headquarters in Virginia Beach. O'Hagan drove the cruiser and DeAngelis sat in the front passenger seat. At some point during the drive from the hotel to police headquarters, plaintiff complained that he needed to urinate. O'Hagan stopped the

cruiser in the back lot of a hotel. DeAngelis removed plaintiff from the cruiser and gave him an opportunity to urinate. However, plaintiff did not urinate and was returned to the back seat of the cruiser by DeAngelis.

As they continued en route to police headquarters, plaintiff again complained multiple times that he needed to urinate and that he would do so on himself as well as the back seat of the cruiser. O'Hagan eventually stopped the vehicle at a Hardee's restaurant in Virginia Beach, parking it in the lot near the restaurant's front door. DeAngelis opened the rear passenger door to let plaintiff out. According to the amended complaint, plaintiff realized during this stop that the right cuff of the handcuffs had not been properly secured. He admits that he slipped this cuff off his wrist and when DeAngelis opened the car door, plaintiff stood up with his hands behind his back and ran across the parking lot. DeAngelis drew his service firearm and ordered plaintiff to stop, but plaintiff did not heed DeAngelis' order and continued to run. DeAngelis pursued plaintiff on foot, and an unidentified individual also began to chase plaintiff. This individual, apparently a member of the general public, grabbed plaintiff by the pant leg or ankle. As a result, plaintiff lost his footing and fell to the ground, landing on his stomach.

It is further uncontested that after DeAngelis began to pursue plaintiff on foot, O'Hagan, who remained with the cruiser, after alerting her dispatch division of plaintiff's escape, backed the cruiser away from the Hardee's restaurant and drove in the direction that plaintiff had fled. By this time, however, O'Hagan could not see either plaintiff or DeAngelis, as both had run around the corner of the restaurant, which obstructed her view. While chasing the plaintiff, DeAngelis had dropped his police radio. O'Hagan stopped the cruiser to retrieve DeAngelis' police radio, which was had fallen in the parking lot. After retrieving the radio, O'Hagan drove a short distance around the restaurant

building where she observed plaintiff on the ground with DeAngelis and two other individuals on top of him. When O'Hagan got out of the car, she could smell and taste pepper spray in the air.

What happened between plaintiff landing on his stomach and O'Hagan's arrival is contested. According to the amended complaint (Docket #5), after plaintiff lost his footing and fell on his stomach, DeAngelis, in plaintiff's words, "rearrested" him by securing the cuff on plaintiff's right hand. Plaintiff contends that he then apologized to DeAngelis, who responded by telling plaintiff to "shut the fuck up" and by punching plaintiff in the head and face numerous times. Additionally, during this incident, plaintiff claims that DeAngelis made several "racial slurs" while he continuously punched plaintiff in the head and face. Specifically, plaintiff contends that DeAngelis stated, "Why did you run you stupid black fuck? I am going to show you what I do to black pieces of shit like you who wanna run." Plaintiff asserts that he cried for help, to which DeAngelis responded, "Shut the fuck up before I kill your black ass." Plaintiff states that DeAngelis then pulled out the pepper spray and sprayed it in plaintiff's face numerous times.

In the affidavit accompanying his Motion for Summary Judgment, DeAngelis avers that after plaintiff fell, he was "kicking, flailing and trying to get loose" from the unidentified person's grip. DeAngelis Aff. ¶7. DeAngelis approached plaintiff and plaintiff swung his fists and hit DeAngelis in the face several times with his closed fist and possibly with the loose handcuff. DeAngelis states that he "blocked several blows" from plaintiff and then finally "struck" plaintiff, who continued to "flail and kick at" DeAngelis and the unidentified person. Id. DeAngelis further maintains that plaintiff kicked "so hard" that DeAngelis was knocked backward. DeAngelis Aff. ¶8. At this time, a second unidentified person, who had been pursuing plaintiff, jumped on plaintiff's back. DeAngelis deployed pepper spray, but states that it was ineffective in "gaining control" of plaintiff.

Id. As DeAngelis tried to "gain control" of plaintiff's arms by unspecified means, plaintiff continued to "resist" and struck DeAngelis on the shoulder, neck and head. According to DeAngelis, plaintiff "never stop[ped] resisting and he never gave up" until DeAngelis and the two unidentified persons succeeding in holding plaintiff's head and shoulder blades down. DeAngelis Aff. ¶9. At that point, O'Hagan arrived in the cruiser and placed handcuffs on plaintiff. Id. DeAngelis states that once the handcuffs were secured on plaintiff, no additional force or pepper spray was used. DeAngelis Aff. ¶11.

In the affidavit accompanying her Motion for Summary Judgment, O'Hagan states that when she drove around the building, she observed plaintiff lying on the ground on his stomach with DeAngelis and the two unidentified citizens on top of him, attempting to restrain him. O'Hagan Aff. ¶14. O'Hagan attests that plaintiff "was not calm," and that DeAngelis and the two citizens were having difficulty restraining plaintiff because he was "vigorously struggling" against their efforts. O'Hagan Aff. ¶15. O'Hagan stopped her cruiser and proceeded to assist in the effort to subdue plaintiff. O'Hagan asserts that it took the combined efforts of herself, DeAngelis, and the two unidentified persons to restrain the "continually struggling" plaintiff sufficiently to allow her to secure plaintiff's free hand with the handcuffs. O'Hagan Aff. ¶16. O'Hagan avers that once plaintiff was placed in the handcuffs, she did not observe anyone use any additional pepper spray against him, and she never observed anyone strike him. O'Hagan Aff. ¶¶19-20.

The parties agree that after plaintiff was handcuffed, emergency rescue personnel were called to the scene and medical attention was administered to plaintiff, DeAngelis and the two unidentified persons. Plaintiff was transported by ambulance to a nearby hospital and O'Hagan rode with him in the ambulance. Plaintiff remained in the hospital for several days, where he was treated for

lacerations to his forehead and face, bruising resulting from head injuries, and broken blood vessels in and around his eyes. Plaintiff alleges that he was administered morphine for pain and that, at the time he filed the amended complaint, he was undergoing therapy with a psychologist. DeAngelis states in his affidavit that he sustained bruises to his face and a laceration to his nose, DeAngelis Aff. ¶7, and he has also submitted photographs which show abrasions on his forearm and cheek.

On May 1, 2006, a grand jury sitting in the Circuit Court for the City of Virginia Beach, Virginia returned an indictment against plaintiff for simple assault or assault and battery of a law enforcement officer and for escape from custody, in violation of Virginia Code §§ 18.2-57 and 18.2-479, respectively. On June 6, 2006, plaintiff pled guilty in that court to thirteen counts of obtaining money or property by false pretenses, nine counts of uttering a forged check, and the assault and escape counts charged in the May 1 indictment.

Plaintiff signed a stipulation in connection with his plea of guilty to the assault on a law enforcement officer in which he admitted that had the Commonwealth of Virginia been required to present evidence at trial as to that charge, it would have established that after plaintiff ran from the police cruiser at the Hardee's restaurant, DeAngelis followed him on foot yelling for him to stop running away, and that plaintiff was initially tackled to the ground by an unidentified citizen. Plaintiff also admitted that when DeAngelis tried to "rearrest" plaintiff, who was then on the ground, plaintiff struck DeAngelis in the head several times with a closed fist. He also admitted that when DeAngelis attempted to fight back he continued to punch DeAngelis, and was not subdued until an unidentified citizen jumped on his back. After the court accepted plaintiff's guilty plea, he was sentenced to nine years incarceration with all but two years and six months suspended.

6

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

#### A. <u>Excessive Force Claim Against Defendant DeAngelis</u>:

Summary judgment in favor of defendant DeAngelis is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that the amount of force he used in restraining plaintiff was reasonable given the circumstances. In <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989), the Supreme Court instructed that "[i]n addressing an excessive force claim brought under [42 U.S.C.] § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Essential to this determination is plaintiff's status - whether he was an arrestee or a pre-trial detainee - at the time of the use of force. <u>Id.</u> The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person. <u>Id.</u> at 388. A pre-trial detainee, however, is entitled to the protections of the Due Process Clause of the Fourteenth Amendment. <u>United States v. Cobb</u>, 905 F.2d 784, 788 (4th Cir. 1990). In <u>Riley v. Dorton</u>, 115 F.3d 1159, 1161 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit instructed that a person is an "arrestee" when an officer decides to detain him and that the Fourth Amendment applies only to the single act of the arrest.

Clearly, under the uncontested facts in this record, plaintiff was an "arrestee" at the time of the events giving rise to his complaint. Accordingly, his claim of excessive force properly is analyzed under the Fourth Amendment's standard of reasonableness. <u>See</u> <u>Vathekan v. Prince George's County</u>, 154 F.3d 173, 178 (4th Cir. 1998). This standard takes into account the severity of the alleged crime for which the person is being arrested, whether the suspect poses a threat to the safety of the police officers or others, and whether the suspect was attempting to evade arrest by flight or actively resisting arrest. <u>Graham</u>, 490 U.S. at 396; <u>see</u> <u>Foote v. Dunagan</u>, 33 F.3d 445 (4th

Cir. 1994).

It is uncontradicted in the record that at the time of his arrest, plaintiff had escaped from custody and was fleeing from defendant DeAngelis to avoid "rearrest." Plaintiff admits in his amended complaint, and O'Hagan attests in her affidavit, that DeAngelis was "yelling at" plaintiff and ordering him to stop as they ran, but plaintiff ignored those commands and continued to flee.

Moreover, both defendants attest that plaintiff continued to struggle vigorously as first DeAngelis and then DeAngelis along with O'Hagan attempted to secure him and take him into custody. DeAngelis avers that he sustained several blows from plaintiff's fists as well as a powerful kick before he began to use force against plaintiff. The photographs submitted in connection with DeAngelis' summary judgment motion bear out the fact that he received bruises, abrasions and a laceration during this incident. Thus, plaintiff clearly posed a threat to DeAngelis' safety at that point in time.

In the amended complaint, plaintiff contends that after he lost his footing and fell on his stomach, plaintiff merely apologized to DeAngelis while DeAngelis effected plaintiff's "rearrest" by securing the handcuffs on plaintiff's right hand. Nonetheless, according to plaintiff, DeAngelis responded with racial slurs and numerous punches to plaintiff's head and face. However, in the stipulation plaintiff signed in connection with his plea of guilty to the criminal charge of assault and battery on a law enforcement officer that arose from this incident, he admitted that when DeAngelis attempted to "rearrest" him, he first struck DeAngelis in the head several times with a closed fist and then continued to punch DeAngelis after DeAngelis began to fight back. It is well settled that such representations of a defendant at a plea hearing carry a strong presumption of veracity and constitute a formidable barrier in subsequent collateral proceedings. Blackledge v. Allison, 431 U.S. 63 (1977).

In the face of such representations, the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal. Id. Consistent with that principle, the Fourth Circuit holds that where a party has sworn to and benefitted from a factual position in an earlier proceeding, judicial estoppel precludes him from altering that assertion in subsequent litigation. Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996)(guilty plea to maliciously attacking a police officer barred defendant's subsequent civil rights claims for excessive force); see also, Dorsey v. Ruth, 222 F. Supp. 2d 753 (D. Md. 2002)(summary judgment granted to defendant on Fourth Amendment claim of unjustified shooting where plaintiff had pleaded guilty to assaulting a police officer). Plaintiff's portrayal of his benign behavior during the encounter with DeAngelis is totally contradicted by his own admissions during his guilty plea in which he admitted that he assaulted and battered DeAngelis during his escape and recapture.

Because plaintiff fled from DeAngelis, actively resisted arrest, and posed a threat to DeAngelis' safety, even when viewing the facts in a light most favorable to plaintiff, the Court cannot conclude that DeAngelis' actions and use of force were unreasonable under the circumstances. See, e.g., Saucier v. Katz, 533 U.S. 194, 205 (2001) ("Because 'police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation,' the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective.") (citations omitted) (quoting Graham, 490 U.S. at 395); see also Crumley v. St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003) (noting that the right to make an arrest or stop necessarily encompasses the right to use some degree of force to effect it). Even deadly force may be used "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical

harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985). Therefore, DeAngelis' use of force while arresting plaintiff was not unreasonable given the circumstances he faced. Because plaintiff has neither contradicted defendant DeAngelis' evidence nor demonstrated that the force used was excessive under the circumstances, DeAngelis' Motion for Summary Judgment will be granted.[2]

B. Excessive Force/Bystander Liability Claim Against Defendant O'Hagan:

Plaintiff asserts that O'Hagan was "equally responsible" for DeAngelis' alleged use of excessive force against him because she remained in the police vehicle instead of attempting to stop DeAngelis from assaulting plaintiff. Liberally construed, plaintiff claims that O'Hagan is liable to him on a theory of bystander liability for any constitutional violations committed by defendant DeAngelis.

The Fourth Circuit has recognized a cause of action under 42 U.S.C. § 1983 for bystander liability. In Randall v. Prince George's County, 302 F.3d 188, 203-04 (4th Cir. 2002), the Court held that a police officer may be obligated, in certain limited situations, to act affirmatively to protect the constitutional rights of citizens when those rights are threatened by other law enforcement officers. This theory of liability is based on the principle that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." Id. at 204 (quoting Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972)). For bystander liability to attach, however, a plaintiff must demonstrate that the bystander officer: 1) knew that a fellow officer was violating

---

[2] Given that defendant DeAngelis has established his entitlement to judgment as a matter of law on plaintiff's claim of excessive force, it is unnecessary for the Court to address DeAngelis' arguments on the question of qualified immunity.

11

an individual's constitutional rights; 2) had a reasonable opportunity to prevent the harm; and 3) chose not to act. Id.

O'Hagan's uncontested affidavit establishes that she is entitled to judgment as a matter of law on plaintiff's claim against her. As discussed above, after O'Hagan radioed her dispatch division regarding plaintiff's escape and then drove her police cruiser behind the Hardee's restaurant, she saw plaintiff lying on the ground on his stomach, "vigorously struggling" against the mutual efforts of DeAngelis and the two unnamed citizens to restrain him. O'Hagan was aware that pepper spray had already been deployed as part of those efforts because she could taste and smell it, but at no time did she personally observe anyone strike the plaintiff. O'Hagan's own assistance was required before plaintiff could be placed in handcuffs, and once plaintiff was secure, O'Hagan observed no additional pepper spray or force being used against him. O'Hagan attests that "[a]t no time did [she] observe detective DeAngelis or anyone else use any excessive or unnecessary force or engage in force outside of Police Department policy." O'Hagan Aff. ¶25.

Given this uncontested evidence, there is no basis upon which to impose bystander liability on O'Hagan. DeAngelis did not violate plaintiff's rights in rearresting him, and O'Hagan did not have any knowledge or suspicion that DeAngelis violated plaintiff's rights. Randall v. Prince George's County, 302 F.3d 188. Accordingly, summary judgment will be granted in her favor.[3]

---

[3] Given that O'Hagan has established her entitlement to judgment as a matter of law on plaintiff's bystander liability claim against her, it is unnecessary for the Court to address O'Hagan's arguments on the question of qualified immunity. Moreover, as there is no indication that plaintiff is asserting his claim against O'Hagan in her official capacity, there is likewise no need to address O'Hagan's arguments on this issue.

C. <u>Claim of Racial Slurs Against Defendant DeAngelis</u>:

In his initial complaint, plaintiff included a cursory allegation that DeAngelis "shouted racial slurs" at him while he was on the ground being pepper sprayed. Compl. at 4. In consideration of his <u>pro se</u> status, plaintiff was given an opportunity to particularize and amend this assertion. In the amended complaint, plaintiff provides more detail as to the precise language allegedly employed by DeAngelis, and DeAngelis admits in his own affidavit that "[d]uring the heat of the confrontation some inappropriate words may have been spoken." DeAngelis Aff. ¶12. However, plaintiff makes no showing that DeAngelis took any action to threaten or to harm him predicated on those remarks.

Verbal harassment and abuse by arresting officers, without more, does not rise to the level of a constitutional claim under §1983. See <u>Collins v. Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979), <u>cited favorably in</u>, <u>Moody v. Grove</u>, 885 F.2d 865 (4th Cir. 1989) (table) (unpublished).[4] "[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis of a §1983 claim." <u>Keyes v. City of Albany</u>, 594 F.Supp. 1147 (N.D.N.Y. 1984). Only when a verbal threat is combined with action apparently designed to carry out the threat can it constitute a claim of constitutional dimension, <u>Hudspeth v. Figgins</u>, 584 F.2d 1345, 1348 (4th Cir. 1978), but no such circumstances have been established here. Therefore, defendant DeAngelis is entitled to judgment as a matter of law on plaintiff's claim of racial slurs, and summary judgment will be granted in his favor.

## IV. Conclusion

For the foregoing reasons, O'Hagan's Motion for Summary Judgment will be granted and her Motion to Dismiss the complaint will be denied as moot. DeAngelis' Motion for Summary

---

[4] A copy of the unpublished opinion is attached.

Judgment also will be granted as to both claims remaining against him. This disposition renders moot plaintiff's remaining motions seeking an extension of time and discovery items. Moreover, because plaintiff qualifies to continue to proceed in forma pauperis in this matter, his application will be granted. An appropriate Order and Judgment shall issue.

Entered this 28th day of August 2008.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
**United States District Judge**